UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
MAR 17 2006
CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

In re:

MICHAEL NOVOTNY,

    Debtor.
_____/

Case No. 6:05-bk-01679-ABB
Chapter 7

AMERICAN MOTORSPORTS, INC.,

    Plaintiff,

vs.

MICHAEL NOVOTNY,

    Defendant.
_____/

Adv. Pro. No. 6:05-ap-00150-ABB

## MEMORANDUM OPINION

This matter came before the Court on the Complaint[1] filed by American Motorsports, Inc., the Plaintiff herein ("Plaintiff"), against Michael Novotny, the Defendant and Debtor herein ("Debtor"), to determine the dischargeability of a debt for automotive parts pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(6). A trial was held on February 9, 2006. Appearing at trial were the Debtor, *pro se*, counsel for the Plaintiff, and the Plaintiff's owner. The parties were granted leave to file supplemental briefs. Neither party filed post-trial briefs. After reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises, the Court makes the following Findings of Fact and Conclusions of Law:

---

[1] Doc. No. 1.

## **FINDINGS OF FACT**

The Debtor filed an individual Chapter 7 bankruptcy case on February 23, 2005 and he received a discharge of debt on June 20, 2005.[2] He suffered a heart attack in 2002 and the resulting medical bills and his inability to work caused him to seek bankruptcy protection.

The Debtor owns a 1987 Chevrolet El Camino ("Vehicle") that has been modified from factory stock with aftermarket automotive parts and equipment. The Vehicle is considered a "hot rod." The Debtor is knowledgeable regarding automobiles. The Plaintiff is an automotive store located in Orlando, Florida specializing in the sale of high performance automotive parts, custom accessories, and custom engines to customers with high-end and specialty vehicles. The Debtor met with Ronald Dickerson, the Plaintiff's owner, sometime in July 2003 and purchased a radiator for his Vehicle for approximately $300.00. He paid for the radiator using his credit card.

The Debtor later went to the Plaintiff's store and requested the Plaintiff order certain parts for the Vehicle. The Debtor wanted the Plaintiff to supply the parts and have a third-party install them. The Plaintiff provided the name of Maverick Automotive ("Maverick") in response to the Debtor's request for a referral for the service work. The Debtor took the Vehicle to Maverick to determine what parts he needed. He returned to the Plaintiff's store and requested the Plaintiff order specific parts. The Plaintiff ordered the parts specified by the Debtor and, after they arrived, sent them directly to Maverick for installation. The Debtor was to pay the Plaintiff directly for the parts ordered by the Plaintiff. The parts ordered by the Debtor from the Plaintiff were worth approximately $300.00. The Debtor, knowing he had a charge limit of approximately $300.00 on

---

[2] Main Case Doc. No. 10.

his credit card (the same credit card he used to purchase the radiator). authorized the Plaintiff to charge his card for the parts.

Maverick installed the parts ordered by the Plaintiff. It issued an invoice to the Debtor for the services performed and certain additional parts.[3] The Vehicle was in Maverick's possession for approximately fourteen days. Maverick released the Vehicle to the Debtor after it finished the service work. The Debtor reviewed Maverick's invoice and paid the invoice in full with cash before taking possession of the Vehicle. The Debtor believed he had paid for all of Maverick's and the Plaintiff's charges in full when he took possession of the Vehicle.

The Plaintiff issued an invoice to the Debtor by facsimile in the amount of $1,177.98 on July 15, 2003.[4] The Debtor was only billed once, through the Plaintiff's invoice, for the parts provided by the Plaintiff. Maverick's invoice did not contain any charges for the parts ordered by the Plaintiff. The Plaintiff attempted to charge the Debtor's credit card after Maverick had completed the service work. The credit card company declined the charge (apparently because the Debtor had exceeded his credit limit). The Debtor promised to pay for the parts by check when the Plaintiff informed the Debtor of the declined charge. The Debtor never paid the Plaintiff's invoice.

The Debtor contends he never authorized the Plaintiff to order some of the parts it ordered (including a clutch) and the Plaintiff overcharged him for the parts. The Debtor believed the Plaintiff's charges should have totaled approximately $300.00. The Plaintiff contends the Debtor tendered his credit card to the Plaintiff knowing the card would be declined and he had no intention of paying the Plaintiff for the parts. The Court finds the Debtor's testimony credible.

---

[3] Plaintiff's Exh. No. 2.
[4] Plaintiff's Exh. No. 1.

3

The Plaintiff presented Exhibit Nos. 1 and No. 2, which were admitted into evidence, without objection. The Debtor presented five exhibits, but did not move any of the exhibits into evidence. The Plaintiff presented no written statement upon which it may have relied in believing it had authority to charge the Debtor's credit card for the parts. The Plaintiff presented no evidence in support of its contention the Debtor knew the credit card charge would be declined.

## CONCLUSIONS OF LAW

The Plaintiff challenges the dischargeability of the debt in the amount of $1,177.98 pursuant to § 523(a) of the Bankruptcy Code. The party objecting to the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence.[5] Section 523(a) "should be strictly construed against the creditor and liberally in favor of the debtor."[6]

The Plaintiff references §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6) in the opening paragraphs of its Complaint, but only addresses § 523(a)(2)(A) in its prayer for relief. The Plaintiff also only references § 523(a)(2)(A) in its Compliance with Order of Court.[7] Section 523(a)(2)(B) requires a plaintiff to establish it reasonably relied upon a materially false *written statement* respecting the debtor's financial condition provided by the debtor with the intent to deceive the plaintiff. The Plaintiff has failed to plead or establish any of the elements of § 523(a)(2)(B). Section 523(a)(6) requires a plaintiff to establish the debt arose through the willful and malicious injury by the debtor. The Plaintiff did not plead in its Complaint or establish at

---

[5] Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Fed. R. Bankr. P. 4005 (2005).
[6] In re Hunter, 780 F.2d 1577, 1579 (11th Cir. 1986); In re Bernard, 152 B.R. 1016, 1017 (Bankr. S.D. Fla. 1993). "Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." 4 COLLIER ON BANKRUPTCY ¶523.05, at 523-24 (15th ed. rev. 2005).
[7] Doc. No. 10.

4

trial any of the elements of § 523(a)(6). Any claim asserted by the Plaintiff pursuant to § 523(a)(2)(B) or § 523(a)(6) must be denied.

## 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[8] Courts require a plaintiff to establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action.[9] A plaintiff must establish: (i) the debtor made a false representation with the purpose and intent to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation.[10] Pursuant to the Grogan decision,[11] the objecting party must establish each of the four elements of fraud by a preponderance of the evidence.[12]

The false representation giving rise to the claim must have been knowingly and fraudulently made to except the debt from discharge.[13] A plaintiff must establish the debtor intended to deceive the plaintiff through the false representation.[14] Intent is a subjective issue requiring the court to "examine the totality of the Debtor's actions to determine if [he] possessed

---

[8] 11 U.S.C. § 523(a)(2)(A) (2005).
[9] SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998).
[10] Id.; In re Johannessen, 76 F.3d 347, 350 (11th Cir. 1996).
[11] See Note 5 supra.
[12] In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).
[13] 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d], at 523-44.9.
[14] In re Stevens, No. 02-8501-8G7, Adv. No. 8:02-ap-589-PMG, 2003 Bankr. LEXIS 1950, at 14 (Bankr. M.D. Fla. September 12, 2003).

the requisite intent to deceive the Plaintiffs."[15] The party objecting to discharge must then establish it relied on the false representation[16] and such reliance was justified.[17]

Bad intent is the cornerstone element of § 523(a)(2)(A) and without it a plaintiff cannot prevail. Other than the testimony of Mr. Dickerson, which was refuted by the Debtor, there is no evidence the Debtor authorized the Plaintiff to charge more than $300.00 in parts to his credit card. There is no evidence the Debtor fraudulently induced the Plaintiff to sell him automotive parts. The Court is required to strictly construe § 523(a)(2)(A) against the Plaintiff and liberally in favor of the Debtor.[18] The Plaintiff has not established by a preponderance of the evidence the first element § 523(a)(2)(A), that the Debtor made a misrepresentation with the intent to deceive the Plaintiff.

The Plaintiff has failed to establish the elements of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6). The debt is not entitled to be excepted from discharge and judgment will be entered in favor of the Debtor. The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

Dated this 17 day of March, 2006.

ARTHUR B. BRISKMAN
United States Bankruptcy Court

---

[15] Id. (quoting In re Copeland, 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003)).
[16] Id.; City Bank & Trust Co. v. Vann, (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995); In re Perkins, 52 B.R. 355, 357 (Bankr. M.D. Fla. 1985).
[17] Field v. Mans, 516 U.S. 59, 73-5, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995) (establishing that § 523(a)(2)(A) requires justifiable reliance rather than the former standard of reasonable reliance); In re Vann, 67 F.3d at 281.
[18] In re Hunter, 780 F.2d at 1579; In re Bernard, 152 B.R. at 1017; 4 COLLIER ON BANKRUPTCY ¶523.05, at 523-24.